# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2015 Term

_____

No. 14-0045
_____

**FILED**

**February 5, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LEWIS COUNTY BOARD OF EDUCATION,**
**Petitioner Below, Petitioner**

v.

**MICHAEL HOLDEN,**
**Respondent Below, Respondent**

_____

**Appeal from the Circuit Court of Kanawha County**
**The Honorable Louis H. Bloom, Judge**
**Civil Action No. 13-AA-85**

**REVERSED**
_____

**Submitted: January 14, 2015**
**Filed: February 5, 2015**

Jason S. Long, Esq.                     Andrew J. Katz, Esq.
Denise M. Spatafore, Esq.               The Katz Working Families' Law Firm,
Dinsmore & Shohl, LLP                   LC
Morgantown, West Virginia               Charleston, West Virginia
Counsel for the Petitioner              Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

CHIEF JUSTICE WORKMAN, deeming herself disqualified, did not participate in the decision of the Court.

**SYLLABUS BY THE COURT**

1. "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. Pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

2. "[T]he time in which to invoke the grievance procedure does not begin to run until the grievant knows of the facts giving rise to a grievance." Syl. Pt. 1, in part, *Spahr v. Preston Cnty. Bd. of Educ.*, 182 W.Va. 726, 391 S.E.2d 739 (1990).

3. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).

4. "It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity." Syl. Pt 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925).

5.    "That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms."  Syl. Pt. 14, *State v. Harden*, 62 W.Va. 313, 58 S.E.715 (1907).

**Justice Ketchum:**

The Lewis County Board of Education (the Board) appeals an order entered in the Circuit Court of Kanawha County which reversed a decision by the West Virginia Public Employees Grievance Board. In its order, the circuit court held that: (1) the Board improperly terminated Michael Holden (Holden) from his job as a school bus driver; and (2) Holden timely filed a grievance of the Board's denial of his request for a leave of absence.

The Board argues on appeal that there was sufficient evidence to terminate Holden based on his physical incompetency to safely do his job. It contends that the test it used to assess Holden's abilities was fair, effective, and allowed by state law, and is routinely used by county school boards to test all newly-hired bus drivers and some existing bus drivers. The Board also asserts that Holden's grievance on the denial of his request for another leave of absence was untimely because it was filed outside the statutory filing period.

Upon review of the record, we reverse the circuit court's order and reinstate the grievance board's decision that Holden was properly terminated and that his grievance on the leave of absence issue was not timely filed.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

This dispute has its origin in October 2010, when a non-work-related injury forced Holden to take an unpaid leave of absence from his job as a school bus driver for

1

the remainder of the 2010-2011 school-year.[1]  At that time, Holden weighed approximately 495 pounds.  His recovery was slow, which prompted him to take a leave of absence for the 2011-2012 school year as well.  Holden gained almost 100 pounds during his two years away from work, bringing his weight up to 580 pounds as of August 2012, when he returned to his work for the Board.[2]

When Holden returned to work, Board officials (and some members of the community) were worried about his ability to safely drive a school bus, given his physical condition and the amount of time he spent away from work.  The Board further doubted Holden's ability to respond to emergency situations, such as a bus fire or a wreck.

The Board contacted the Executive Director for the West Virginia Office of School Transportation regarding its concern about Holden.  The Executive Director recommended that Holden be administered a physical performance test (PPT test) to gauge his ability to perform his duties.  The PPT test was adopted by the State Board of Education in 2006 as a representation of the minimum standards required of bus drivers,

---

[1]  Holden injured his back at home while he was brush-hogging.

[2] No other school bus driver in Lewis County has been granted leave of absence for as long as Holden (two years).  Pursuant to his desire to return to his post as school bus driver, Holden underwent a mandatory medical examination, which checks for symptoms such as convulsive seizures, certain heart problems, loss of vision, *etc*. However, this examination did not assess Holden's ability to respond to an emergency situation, and it did not provide an accurate reading of his weight.

2

and it is mandatory for all new candidates applying for a job as school bus driver.[3] Some county school boards have also administered this test to existing bus drivers, although the Board had not done so until the facts giving rise to this case.

Upon the Board's request, an official from the West Virginia Office of School Transportation (state official) traveled to Lewis County on August 24, 2012, to administer the PPT test on Holden. As part of the PPT test, Holden was required to demonstrate his ability to perform a variety of job-related tasks, which included making "three trips up and down the bus stairwell within thirty seconds." Holden took forty-eight seconds to complete this task. Consequently, he failed the PPT test.

The state official recommended that Holden "not be permitted to drive a school bus unless or until his physical condition would enable him to successfully complete the test." The Board immediately informed Holden that it would not permit him to continue operating a school bus for the Board. Holden replied by requesting another leave of absence for the 2012-2013 school-year.

At an executive meeting held on September 10, 2012, the Board denied Holden's request for a third (year-long) leave of absence. The Board's superintendent formally notified Holden in a letter dated September 11, 2012, that the Board denied his

---

[3] The Executive Director of the State Office of School Transportation testified that the PPT test was derived from a similar test administered to school bus drivers in New York. He stated that the test's purpose was to "assure that the new drivers that we were testing . . . could meet those [minimum] standards."

3

request for another leave of absence. The letter also told Holden that the superintendent would recommend that his employment be terminated at a later board meeting.

On October 8, 2012, the Board afforded Holden a full evidentiary hearing solely on the issue of whether to terminate his employment. At the hearing, evidence was presented on Holden's failure to pass the PPT test. Holden suggested that the Board grant him another leave of absence, even though the Board had already denied this request during the previous month. The Board did not give any consideration to Holden's suggestion. At the close of the hearing, the Board decided to terminate Holden's employment due to his physical inability to safely perform his job duties. In a letter dated October 10, 2012, the Board's superintendent informed Holden that the Board terminated his employment as a school bus driver, retroactive to August 25, 2012.

State law requires a school employee to file a grievance within fifteen days of learning of an adverse employment decision. On October 26, 2012, Holden filed a grievance with the West Virginia Public Employees Grievance Board alleging: (1) the Board's October 10th termination of his employment was improper; (2) the Board discriminated against him in singling him out to take the PPT test; and (3) the Board's September 11th denial of his request for another one-year leave of absence was improper. After a hearing, the administrative law judge upheld the Board's decision on all issues on the following grounds: (1) the PPT test was a proper way to gauge Holden's competency to drive a school bus; (2) Holden did not establish that he was discriminated against; and (3) Holden's grievance on the leave of absence was not timely filed within fifteen days.

4

The Circuit Court of Kanawha County reversed the administrative law judge's decision. It held that the Board's termination of Holden was improper and the wrong date was used to determine whether Holden timely filed his grievance as to the leave of absence issue. Accordingly, the circuit court ordered that the Board's decision to terminate Holden be set aside and that the Board "either grant [Holden's] request for medical leave or hold a hearing on [Holden's] grievance pertaining to the same." The circuit court did not address whether the Board discriminated against Holden.

## II.
## STANDARD OF REVIEW

In reviewing a circuit court's decision following a grievance ruling, we have held:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Furthermore, "[A] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board . . . should not be reversed unless clearly wrong." Syl. Pt. 1, in part, *Randolph Cnty. Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).

5

# III.
## ANALYSIS

Both Holden and the Board contend the circuit court erred in its decision. The Board asserts the circuit court erred when it: (1) held that Holden's termination was improper; and (2) determined that Holden's grievance as to the denial of his leave of absence was timely filed. By contrast, Holden argues on cross-appeal that the circuit court was only partly right, and should have gone farther by: (1) finding the Board discriminated against him; and (2) reinstating him to his position and awarding him back-pay.

After careful consideration of the record, we find the circuit court erred when it reversed the grievance board's decision. We find that the Board properly assessed Holden's ability to perform his job and did not discriminate against him in terminating his employment. We also find that Holden did not timely contest the September 11th denial of his request for a leave of absence.

### A. *Termination of Holden's employment as school bus driver*

In October 2012, the Board terminated Holden for being physically incompetent to safely perform his duties as a school bus driver. Incompetency is a ground for terminating a school employee under *W.VA. CODE* § 18A-2-8(a) [2007].[4]

---

[4] *W.VA. CODE* § 18A-2-8(a) [2007] states: "a board may suspend or dismiss any person in its employment at any time for: Immorality, *incompetency*, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge." (Emphasis added).

The Board argues that its method of finding Holden incompetent (the PPT test) was effective, fair, and allowed by state law. The Board further contends that this test was specifically designed for the purpose of measuring the capabilities of bus drivers, so its determination of Holden's incompetency based on his failing the test was proper. Holden responds that using the PPT test to gauge incompetency was improper as against him, an existing school bus driver. He asserts that the Board was bound by the single method provided in the *West Virginia School Bus Transportation Policy and Procedures Manual*: a medical examination by a health care provider. *See W.VA. C.S.R.* § 126-92-3.18.2 [2013].[5]

The West Virginia Board of Education adopted the *School Bus Transportation Policy and Procedures Manual* as "guidelines to county school bus transportation systems to insure safe, high quality programs for the students transported to the public schools in West Virginia." *W.VA. C.S.R.* § 126-92-3.1.3. Pursuant to that objective, every candidate for a position as school bus driver must pass a test on "skills and performance." *W.VA. C.S.R.* § 126-92-3.15.2.14.[6] This test on "skills and performance" is the PPT test.

---

[5] Holden's argument primarily relies on *W.VA. C.S.R.* § 126-92-3.18.2, which states: "The County Superintendent has the right to require a physical and/or psychological examination *from a designated health care provider* when he or she has any reasonable questions regarding the ability of a school bus operator and the safety of students or the sufficiency of an annual physical examination." (Emphasis added).

[6] *W.VA. C.S.R.* § 126-92-3.15.2.14, provides: "Upon successful completion of the online examination, the candidate shall pass additional tests on skills and

(continued . . .)

The West Virginia Board of Education developed the PPT test in 2006 to represent the minimum standards required of school bus drivers. Passing the PPT test requires the examinee to demonstrate his/her ability to complete a variety of skill-related tasks, such as operating the bus's door, moving from the driver's seat to the emergency exit, and the task Holden failed to complete: making three trips up and down the bus stairs within thirty seconds. Each component of the PPT test assesses a specific skill-set. For example, making the examinee take three trips up and down the bus stairs assures "that the bus operator can, in case of an emergency, be able to get in and out of the bus to help evacuate the students[.]"

Likewise, several county school boards in West Virginia have required existing bus drivers to pass the PPT test. The Board argues that it, like these other county school boards, should be allowed to administer the PPT test on Holden to gauge his competency to safely operate a school bus. It further contends that the PPT test is more accurate in gauging competency than a medical examination because it assures that the driver can perform job-related skills and tasks. The Board also argues that the *School Bus Transportation Policy and Procedures Manual* contains no limiting language that would foreclose methods other than a medical examination for determining a driver's competency.

---

performance administered at the request of the county or institution seeking to employ the candidate by a qualified bus inspector employed by the State Department using vehicles owned or leased by the county."

Holden's argument that the Board was exclusively bound to the method provided in the *School Bus Transportation Policy and Procedures Manual* is encapsulated in the maxim, *expressio unius est exclusio alterius*: "the express mention of one thing implies the exclusion of another." *See Phillips v. Larry's Drive-in Pharm., Inc.*, 220 W.Va. 484, 492, 647 S.E.2d 920, 928 (2007). Courts widely recognize that "blind adherence to [this maxim] has never been the rule[.]" *Degollado v. Gallegos*, 260 Kan. 169, 172, 917 P.2d 823, 826 (1996). *See also Goldberg v. Miller*, 371 Md. 591, 810 A.2d 947 (2002) (stating the maxim of statutory construction, *expressio unius est exclusio alterius*, "should be used with caution and not as a rule of law.").

Even though this case involves the interpretation of regulations, not statutes, the ordinary canons of statutory interpretation apply. *Feathers v. W.Va. Bd. of Med.*, 211 W.Va. 96, 103, 562 S.E.2d 488, 496 (2001) ("[W]hen regulations enacted by an agency have been legislatively approved, they have the force of statutes and are interpreted according to ordinary canons of statutory interpretation."). We have held: "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). We have also said:

> It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

9

Syl. Pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925). Furthermore, "[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms." Syl. Pt. 14, *State v. Harden*, 62 W.Va. 313, 58 S.E.715 (1907), *disapproved of on other grounds by Wiseman v. Calvert*, 134 W.Va. 303, 59 S.E.2d 445 (1950). *See also Mitchell v. Broadnax*, 208 W.Va. 36, 46, 537 S.E.2d 882, 892 (2000) ("Although a provision's language may be plain, there nevertheless may arise circumstances in which the plain language does not speak completely on the subject to which it is addressed.").

The stated intent behind the *School Bus Transportation Policy and Procedures Manual* is "to provide guidelines to county school bus transportation systems to insure *safe*, high quality programs for the students transported to the public schools in West Virginia." *W.VA. C.S.R*. § 126-92-3.1.3 (emphasis added). Furthermore, in describing the physical qualifications for being a school bus driver, the *School Bus Transportation Policy and Procedures Manual* provides: "The school bus operator shall have no mental, nervous, organic or functional disease or psychiatric disorder and take no medication likely to *interfere with his or her ability to operate the bus safely*." *W.VA. C.S.R*. § 126-92-3.16.1 (emphasis added). Clearly, the safety of the student passengers is a primary intent behind the regulations pertaining to school bus drivers.

The PPT test is one of the guidelines adopted by the State Board of Education to ensure new bus drivers have the ability to operate the bus safely. *W.VA. C.S.R*. § 126-92-3.15.2.14. It represents the minimum standard required of all bus

10

drivers. The PPT test measures whether a school bus driver can physically perform basic, safety-related tasks, particularly in an emergency, which is essential to a safe, high quality school transportation program. Regardless of when Holden was initially certified to drive a school bus, it is implicit that he, as a school bus driver, be physically capable of completing fundamental tasks necessary to operate a bus safely and to meet the needs of his student passengers in the event of an emergency. The PPT test is a neutral means of measuring Holden's ability to do so.

By failing the PPT test, Holden demonstrated an inability to meet the minimum standard required of school bus drivers. Therefore, the Board did not err in terminating Holden based on incompetency as determined by his failing the PPT test, and the circuit court erred by setting aside the administrative law judge's decision.[7] *W.VA. CODE* § 18A-2-8(a).

### B. Discrimination

Holden argues on cross-appeal that the circuit court erred in failing to discuss whether the Board discriminated against him by singling him out to take the PPT test. Holden notes that no other existing school bus driver in Lewis County has been required to take the PPT test. The Board replies that the PPT test has been administered on existing bus drivers in other counties. Because the PPT test is a neutral measure of a

---

[7] Because the Board's termination of Holden was proper, we reject his argument that the Board is required to reinstate him and give him back-pay.

11

bus driver's ability to perform actual job responsibilities, the Board asserts there was no discrimination as defined by state law.

"'Discrimination' means any differences in the treatment of similarly situated employees, unless the differences are related to the actual job responsibilities of the employees or are agreed to in writing by the employees." *W.VA. CODE* § 6C-2-2(d) [2008]. The test for determining whether an employee of a board of education has suffered discrimination is as follows: "A discrimination claim . . . need only establish that the adverse employment action was neither job related nor agreed to by the employee who brings the claim. Once a claim is established, an employer cannot escape liability by asserting a justification, such as financial necessity, for the discriminatory treatment[.]" Syl. Pt. 5, *Bd. of Educ. of Tyler v. White*, 216 W.Va. 242, 605 S.E.2d 814 (2004).[8]

Holden argues that his two-year absence from work does not justify the Board treating him differently from the other bus drivers (*i.e.*, singling him out to take the PPT test). However, his past physical injuries and his current physical condition gave the Board articulable reason to doubt Holden's ability to render aid to his student passengers in an emergency situation, which is clearly related to his actual job responsibilities. *See Frymier v. Higher Educ. Policy Comm'n*, 221 W.Va. 306, 314, 655 S.E.2d 52, 60 (2007)

---

[8] Discrimination in education employment is different than employment discrimination in the general context. We have held: "There are critical differences between discrimination claims under the education statutes and discrimination claims brought under the Human Rights Act which preclude the application of the same legal analysis to both types of claims." *Bd. of Educ. of Tyler*, 216 W.Va. at 246, 605 S.E.2d at 818.

12

(finding school employee's claim of discrimination failed on the ground that "[a]ny difference in treatment was purely related to actual job responsibilities[.]").  Had the Board not required Holden to take the PPT test, the safety of his student passengers would have been compromised, given his inability to meet the minimum standards required of a school bus driver, as reflected in the PPT test.

Holden took a two-year leave of absence, which is the longest period of time ever granted to a school bus driver in Lewis County.  Furthermore, his physical condition when he returned from his leave of absence compromised his actual job responsibilities: which include his ability to aid his student passengers in an emergency situation.  The Board's concern about Holden was shared by some members of the community as well as state officials from the West Virginia Office of School Transportation.  We cannot say the Board's superintendent abused his discretion and engaged in discrimination in requiring Holden to take the PPT test.  Therefore, we find no error in the circuit court's failure to discuss the administrative law judge's finding that there was no discrimination.

### C.  *Denial of Holden's request for a third leave of absence*

On September 10, 2012, the Board denied Holden's request for a third leave of absence.  It sent a letter the following day, September 11, informing Holden of this decision.  State law required Holden to contest the Board's denial of his request for a leave of absence within fifteen business days of being "unequivocally notified of the

13

decision." *W.VA. CODE* § 6C-2-4(a)(1) [2008];[9] *Rose v. Raleigh Cnty. Bd. of Educ.*, 199 W.Va. 220, 222, 483 S.E.2d 566, 568 (1997) ("[T]he running of the relevant time period is ordinarily deemed to begin to run when the employee is *unequivocally notified of the decision*.") (emphasis added).

Giving Holden two business days to receive the September 11 letter, the administrative law judge found that Holden should have been notified of the Board's decision by September 13, 2012. Holden does not dispute his receipt of the letter by that time. The administrative law judge further found that fifteen business days after September 13th was October 4, 2012. Holden did not file his grievance until October 26, 2012, twenty-two calendar days too late. Accordingly, the administrative law judge held, and the Board contends before this Court, that Holden was untimely in filing his grievance as to the denial of his request for a third leave of absence.

Holden argues that September 13 is not the correct date for measuring the timeliness of his grievance. He contends that the fifteen-business-day window began to run at his October 8 termination hearing. At this hearing, Holden unilaterally raised the issue of another leave of absence even though the Board had already informed him of its final decision to deny the request. Further, the Board never considered or discussed the

---

[9] *W.VA. CODE* § 6C-2-4(a)(1) [2008] requires a grievance to be filed within: "fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the employee or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance[.]" *See also W.VA. CODE* § 6C-2-2 [2008] ("'Days' means working days exclusive of Saturday, Sunday, official holidays and any day in which the employee's workplace is legally closed[.]").

leave of absence issue at this hearing. Using October 8, 2012, as the starting point for the fifteen-business-day window, Holden argues that October 29, 2012, was the last day in which he could have timely filed his grievance on the leave of absence issue. Because Holden filed his grievance on October 26, 2012, Holden contends that his grievance on this issue is timely.

Holden's argument implies that the Board's denial of his request for a leave of absence was neither final nor unequivocal until the Board decided to terminate his employment in early October. We disagree. The Board's letter (dated September 11, 2012) clearly states: "[The Board] *denied your request for a leave of absence* for the 2012-2013 school-year." (Emphasis added). This letter created no ambiguity or equivocation as to whether its decision on the leave of absence was final.

Furthermore, the Board was not required to afford Holden a hearing on its decision to deny him another leave of absence.[10] The mere fact that Holden unilaterally raised the leave of absence issue at the October 8 termination hearing is inconsequential. Holden's position would allow a grievant to prolong the grievance process at his/her will

---

[10] *See* Syl. Pt 2, in part, *Cowen v. Harrison Cnty. Bd. of Educ.*, 195 W.Va. 377, 465 S.E.2d 648 (1995) ("County boards of education have substantial discretion in matters relating to hiring, assignment, transfer, and promotion of school personnel[.]"). *See also Ewing v. Bd. of Educ. of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998) (applying rule to employee's grievance regarding Board's denial of employee's request for leave of absence). *But see Bd. of Educ. of Mercer v. Wirt*, 192 W.Va. 568, 453 S.E.2d 402 (1994) (quoting *W.VA. CODE* § 18A-2-8(c) [2007] ("The [terminated] employee shall be given an opportunity, within five days of receiving the written notice, to request, in writing, a level three hearing and appeals[.]").

15

by requesting reconsideration of already-decided issues. This result would render the fifteen-day deadline for filing a grievance meaningless.

Holden's fifteen-business-day window began when he learned of the Board's final decision on the leave of absence issue (September 11, 2012). *See W.VA. CODE* § 6C-2-4 [2008] (employee must file grievance within "fifteen days following the occurrence of the event upon which the grievance is based, *or within fifteen days of the date on which the event became known to the grievant* or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance[.]") (emphasis added). *See also* Syl. Pt. 1, in part, *Spahr v. Preston Cnty. Bd. of Educ.*, 182 W.Va. 726, 391 S.E.2d 739 (1990) ("[T]he time in which to invoke the grievance procedure does not begin to run until the grievant knows of the facts giving rise to a grievance."); *Rose v. Raleigh Cnty. Bd. of Educ.*, 199 W.Va. 220, 222, 483 S.E.2d 566, 568 (1997) ("[T]he running of the relevant time period is ordinarily deemed to begin to run when the employee is unequivocally notified of the decision.").

The parties agree that Holden was unequivocally notified of the Board's denial of his request for a third leave of absence by September 13, 2012. That is when the fifteen-business-day window to file a grievance began. Fifteen business days after September 13, 2012, was October 4, 2012. Neither party disputes that Holden filed his grievance on October 26, 2012, well after the October 4th deadline to do so.

Accordingly, the administrative law judge correctly found that Holden did not timely file his grievance as to the leave of absence issue, and the circuit court erred in finding otherwise.

16

**IV.**
**CONCLUSION**

For the reasons set forth herein, the circuit court erred in reversing the West Virginia Public Employees Grievance Board.  Accordingly, we reverse the decision of the circuit court and reinstate the grievance board's decision that Holden was properly terminated and that his grievance on the leave of absence issue was not timely filed.

Reversed.