Justice Armstead:
*628 In these consolidated workers' compensation cases, four claimants challenge the decisions of the Workers' Compensation Board of Review which rejected their applications for occupational pneumoconiosis ("OP") benefits. The Board rejected the applications pursuant to W.Va. Code , 23-4-15(b) [2010]. That statute provides a claimant with two separate and distinct time limitations within which to file an OP claim: (1) within three years of the claimant's date of last exposure to the hazards of OP or (2) within three years of the date a diagnosed impairment due to OP was made known to the claimant by a physician.
It is undisputed that none of the four claimants filed an application or claim within three years of their date of last exposure. The progressive nature of the disease, however, brings into consideration the second component of W.Va. Code , 23-4-15(b) [2010], i.e. , when a diagnosed impairment due to OP was made known to the claimant by a physician.
According to the claimants, without further exposure to occupational dust, a new claim for OP benefits can be filed at any time and referred to the Occupational Pneumoconiosis Board for analysis, regardless of the three year time limitation, as long as the claimant has not been informed by a physician of an impairment due to OP. The Commissioner and the claimants' employers contend, however, that the claimants' position would result in the filing of numerous, duplicate claims, unsupported by any evidence, which would excessively burden the work of the Occupational Pneumoconiosis Board. The Commissioner and the employers emphasize that, none of the four claims herein, filed years after the date of last exposure to occupational dust, set forth a diagnosed impairment. Thus, the Commissioner and the employers assert that the claims were properly rejected by the Board of Review.
Upon review, this Court concludes that the claimants' position is without merit and that the claims were properly rejected pursuant to W.Va. Code , 23-4-15(b) [2010]. The decisions of the Board of Review in all four cases are, therefore, affirmed.
I. Lester Pennington, Jr.
Pennington was an underground coal miner and general laborer with approximately twenty-four years of exposure to occupational dust. Prior to the current claim, Pennington filed four unsuccessful claims for OP benefits.[1] The current claim, no. 2016008333, is dated July 22, 2015, and lists May 21, 1998, as Pennington's date of last exposure to occupational dust. A Physician's Report and radiology report were filed in conjunction with the claim. Although the radiology report indicated "simple pneumoconiosis," the Physician's Report stated that it was unknown *629 whether Pennington's capacity for work was impaired by OP.
On January 25, 2016, the Claim Administrator rejected the claim. The Claim Administrator cited the last of Pennington's prior OP claims, no. 2001003946, and stated that, because Pennington had no exposure to occupational dust thereafter, his current claim was without merit.[2]
The Claim Administrator's decision, however, was reversed by the Office of Judges. The Office of Judges determined that Pennington was not barred from filing the current claim with the same date of last exposure as the prior claim, no. 2001003946. Central to the decision of the Office of Judges was W.Va. Code , 23-4-15(b) [2010], which provides that the application for occupational pneumoconiosis benefits shall be filed
within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis or within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician and unless filed within the three-year period, the right to compensation under this chapter is forever barred, such time limitation being hereby declared to be a condition of the right and hence jurisdictional, or, in the case of death, the application shall be filed by the dependent of the employee within two years from and after the employee's death, and such time limitation is a condition of the right and hence jurisdictional. (emphasis added)
It is undisputed that Pennington had no exposure to occupational dust after 1998 and that he did not file the current claim within three years thereof. However, the Office of Judges relied on the "diagnosed impairment" language of W.Va. Code , 23-4-15(b) [2010]. Noting that OP can onset for treatment at a later date, the Office of Judges concluded that additional exposure is not required to file a new claim and that the three year statute of limitation, as to Pennington, would only have been triggered by a "diagnosed impairment" made known to him by a physician. Thus, because he had not been informed that he had a diagnosed impairment due to OP, he was not barred from filing the current claim, even with the same date of last exposure as the prior claim.
On November 2, 2017, the Board of Review reversed the Office of Judges. Citing W.Va. Code , 23-4-15(b) [2010], the Board of Review reinstated the Claim Administrator's rejection of Pennington's claim and said without elaboration:
In an occupational pneumoconiosis claim that does not involve a death, the claimant must satisfy one of the following criteria: (1) file the claim within three years from and after the last day of the last continuous period of sixty days or more during which the claimant was exposed to the hazards of occupational pneumoconiosis, or (2) file the claim within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician. Neither of these criteria has been met in this claim. Therefore, the rejection of the claim must be reinstated.
II. Richard L. Arthur
Arthur, a coal miner with twenty-two years of exposure to silica and coal dust, filed two prior, unsuccessful claims for OP benefits.[3] His current claim, no. 2016009150, is dated September 14, 2015, and lists January 13, 2000, as the date of last exposure to occupational dust. A Physician's Report and radiology report were filed in conjunction with the *630 claim. The radiology report indicated simple pneumoconiosis. However, the Physician's Report stated that it was unknown whether Arthur's capacity to work was impaired by OP.
On February 2, 2016, the Claim Administrator rejected Arthur's current claim for OP benefits. That claim and prior claim no. 2002026846 listed the same January 2000 date as Arthur's date of last exposure. Because Arthur had no exposure to occupational dust after January 2000, the Claim Administrator ruled that the current claim was a duplicate of claim no. 2002026846 and should be rejected. However, the Claim Administrator was reversed by the Office of Judges. The Office of Judges determined that Arthur was not barred from filing the current claim with the same date of last exposure to occupational dust as the prior claim.
It was undisputed that Arthur had no exposure to occupational dust after January 2000 and did not file the current claim within three years thereof. However, the Office of Judges relied on the "diagnosed impairment" language of W.Va. Code , 23-4-15(b) [2010], and concluded that additional exposure is not required to file a new claim. Thus, the three year statute of limitation set forth in the statute, as to Arthur, would only have been triggered by a "diagnosed impairment" made known to him by a physician and, since he had not been informed by a physician of such an impairment, he was not barred from filing the current claim.
On November 2, 2017, the Board of Review reversed the Office of Judges and reinstated the Claim Administrator's rejection of the claim. The Board of Review relied on W.Va. Code , 23-4-15(b) [2010], in the same manner as it did regarding Pennington.
III. Robert D. West
West, a plant worker and truck driver/mechanic with thirty-one years of exposure to occupational dust, filed a prior, unsuccessful claim for OP benefits.[4] His current claim, no. 2016016561, is dated November 19, 2015, and lists January 6, 2003, as the date of last exposure to occupational dust. A Physician's Report and radiology report were filed in conjunction with the claim. The radiology report indicated simple pneumoconiosis. Nevertheless, the Physician's Report stated that it was unknown whether West's capacity to work was impaired by OP.
On April 12, 2016, the Claim Administrator rejected West's current claim for OP benefits. Because West had no additional exposure to occupational dust after 2003, the date of last exposure in the prior claim, the Claim Administrator determined that West's current claim was simply a duplicate of the prior claim. However, the Claim Administrator was reversed by the Office of Judges. The Office of Judges determined that West was not barred from filing the current claim with the same date of last exposure as the prior claim.
As with Pennington and Arthur, it was undisputed that West had no additional dust exposure and that he did not file the current claim within three years of the date his exposure ceased. However, the Office of Judges relied on the "diagnosed impairment" component of W.Va. Code , 23-4-15(b) [2010], and concluded that additional exposure is not required to file a new claim. The three year statute of limitation, as to West, would only have been triggered by a "diagnosed impairment" made known to him by a physician and, since he had not been informed by a physician of such an impairment, he was not barred from filing the current claim for OP benefits. According to the Office of Judges, for claims not filed within three years of the date of last exposure, W.Va. Code , 23-4-15(b) [2010], does not require evidence of impairment when the claimant files an application for OP benefits.
On November 2, 2017, the Board of Review reversed the Office of Judges and reinstated the Claim Administrator's rejection of West's claim. The Board of Review relied on *631 W.Va. Code , 23-4-15(b) [2010], in the manner it did regarding Pennington and Arthur.
IV. Randy Keffer
Keffer was employed in surface mining with May 15, 2010, as his date of last exposure to occupational dust. His current claim, no. 2017008634, is dated August 9, 2016, and sets forth no prior claims for OP benefits. A Physician's Report and radiology report were filed in conjunction with the claim. Although the radiology report stated "negative for pneumoconiosis," the Physician's Report completed by a nurse practitioner indicated a diagnosis of "coal dust exposure." Nevertheless, the Physician's Report further indicated that it was unknown whether Keffer had contracted OP and unknown whether his capacity to work was impaired by OP.
On November 2, 2016, the Claim Administrator rejected Keffer's current claim for OP benefits. Citing W.Va. Code , 23-4-15(b) [2010], the Claim Administrator noted that Keffer's claim was not filed within three years of May 15, 2010, his date of last exposure, and that, moreover, Keffer did not have a diagnosis of OP. The Claim Administrator, however, was reversed by the Office of Judges. The Office of Judges emphasized that Keffer's "coal dust exposure" diagnosis resulted from an earlier "black lung exam" conducted by the nurse practitioner. According to the Office of Judges, although Keffer was a smoker, the exam determined that he suffered from a chronic cough, suggesting OP. Nevertheless, the Office of Judges acknowledged:
An examination of the claimant's lung was unremarkable. [Nurse practitioner] Ms. Freeman diagnosed a chronic cough. * * * Ms. Freeman wrote that she did not know if the claimant had occupational pneumoconiosis, how long the claimant had occupational pneumoconiosis and whether the claimant's capacity for work was impaired due to occupational pneumoconiosis.
As stated above, Keffer's radiology report was "negative for pneumoconiosis"
The Board of Review reversed the Office of Judges on November 21, 2017, and reinstated the Claim Administrator's rejection of Keffer's claim. The Board of Review applied W.Va. Code , 23-4-15(b) [2010], as it did in the other three cases.
V. Standard of Review
Pennington, Arthur, West and Keffer appeal from the Board of Review's rejection of their claims for occupational pneumoconiosis benefits. This Court consolidated the claims for purposes of argument.
The standard of review in workers' compensation cases is provided by statute, W.Va. Code , 23-5-15 [2005], which states that deference shall be given to the Board of Review's "findings, reasoning and conclusions." Here, the Board of Review reversed the decisions of the Office of Judges and reinstated the Claim Administrator's rejection of all four OP claims. As a result, subsection (d) of W.Va. Code , 23-5-15 [2005], is applicable which provides a detailed basis for reviewing the Board of Review's decisions:
(d) If the decision of the Board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record.[5]
*632 Cf ., Wilkinson v. West Virginia Office Ins. Comm'n , 222 W.Va. 394, 398, 664 S.E.2d 735, 739 (2008) (A different subsection of W.Va. Code , 23-5-15 [2005], applies where the Board of Review affirms both underlying administrative decisions).
VI. Discussion
A.
Pursuant to W.Va. Code , 23-4-1(a) [2008], workers' compensation benefits shall be paid to employees "who have received personal injuries in the course of and resulting from their covered employment." Subsection (b) of that statute includes occupational pneumoconiosis within the phrase "personal injury."[6]
Benefits, however, cannot be awarded on a diagnosis of OP alone. An impairment is also required. W.Va. Code , 23-4-6a [2005], states, in part, that there shall be no permanent partial disability awarded "based solely upon a diagnosis of occupational pneumoconiosis, it being the intent of the Legislature to eliminate any permanent partial disability awards for occupational pneumoconiosis without a specific finding of measurable impairment." See Wampler Foods, Inc. v. Workers' Compensation Division , 216 W.Va. 129, 140, 602 S.E.2d 805, 816 (2004) (The Legislature eliminated benefits for claimants who have OP "without measurable pulmonary impairment.").
Pursuant to W.Va. Code , 23-4-6a [2005], the percentage of permanent disability is determined by the degree of medical impairment that is found by the Occupational Pneumoconiosis Board.[7] In that regard, W.Va. Code , 23-4-8b [2005], requires the claimant/employee and the employer to produce to the Board "all reports of medical and X-ray examinations which may be in their respective possession or control, showing the past or present condition of the employee." Lastly, W.Va. Code , 23-4-8c(e) [2009], provides that, if the claimant receives a final decision that he or she has no evidence of occupational pneumoconiosis, the claimant is barred for three years from filing a new claim for OP benefits.[8]
The matter before us, however, concerns the application process prior to referral to the Occupational Pneumoconiosis Board. To receive OP benefits, the four claimants were required to satisfy the requirements of W.Va. Code , 23-4-15(b) [2010], regarding the current claims. W.Va. Code , 23-4-15(b) [2010], in cases not involving the death of the claimant, sets forth two time limitations regarding the filing of an application for occupational pneumoconiosis benefits: (1) within three years from and after the last day of the last continuous period of sixty days or more during which the claimant was exposed to the hazards of occupational pneumoconiosis or (2) within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician.
B.
Here, the facts are undisputed. The current applications of Pennington, Arthur, West and Keffer consist of the Employees' Report of Occupational Pneumoconiosis, the Physician's Report and the radiology report. The applications also include the claimants'
*633 history of occupational dust exposure.[9] Pennington, Arthur and West had prior OP claims which were referred to the Occupational Pneumoconiosis Board, resulting in findings in each case of insufficient evidence to make an OP diagnosis. Pennington, Arthur and West had no further occupational dust exposure. Moreover, neither they, nor Keffer, filed their current application for benefits within three years of their date of last exposure. Thus, the Board of Review correctly concluded that the claimants failed to meet the first time limitation in W.Va. Code , 23-4-15(b) [2010], i.e. , that the application for OP benefits shall be filed "within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis."
The second time limitation in W.Va. Code , 23-4-15(b) [2010], states that the application for OP benefits shall be filed "within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician." However, none of the four claims include a diagnosed impairment due to OP. Although the radiology reports indicate "simple pneumoconiosis" regarding Pennington, Arthur and West, all three Physician's Reports state that it is unknown whether their capacity for work has been impaired by OP. The radiology report for Keffer is "negative for pneumoconiosis." Although Keffer's Physicians' Report indicates "coal dust exposure," the Report further indicates that it is unknown whether he contracted OP and unknown whether his capacity for work has been impaired by OP.
The claimants ask this Court to reinstate the decisions of the Office of Judges. The claimants assert that because they were not informed by a physician that they have a diagnosed impairment due to OP, they were not barred from filing new claims, even (as in the case of Pennington, Arthur and West) with the same date of last exposure as in their prior claims. Thus, the claimants rely on the second time limitation in W.Va. Code , 23-4-15(b) [2010], which states that the application for OP benefits shall be filed "within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician." Pennington, Arthur and West emphasize that their current applications indicate a diagnosis of OP (with Keffer's application listing "coal dust exposure"), but since they have yet to be informed of an actual impairment, their claims are timely and must be referred to the Occupational Pneumoconiosis Board.
The respondent Commissioner and employers acknowledge that the claimants may have developed simple pneumoconiosis due to the progressive nature of OP and without additional exposure to occupational dust. However, the respondents focus on the claimants' assertion that these new claims must be referred to the Occupational Pneumoconiosis Board without any evidence of impairment. According to the respondents, W.Va. Code , 23-4-15(b) [2010], requires the claimant, and not the OP Board, to make the initial showing of "a diagnosed impairment due to occupational pneumoconiosis." Otherwise, the respondents argue, the OP Board would be unreasonably burdened with the referrals of any number of new, unsupported claims from the same claimant, based upon the same date of last exposure and without any indication in the new application that the claimant has acquired an impairment due to OP since his or her prior, unsuccessful OP claim.
The current claims of Pennington, Arthur and West, thus raise a limited issue before this Court regarding the filing of new applications for OP benefits, where the claim is unsupported by a diagnosed impairment, and with the same date of last exposure as a *634 prior, unsuccessful claim following adverse findings by the OP Board.
The respondents correctly maintain that the import of the claimants' and the Office of Judges' interpretation of W.Va. Code , 23-4-15(b) [2010], is that a claimant may file unlimited OP claims, and have them all referred to the Occupational Pneumoconiosis Board, as long as the claimant has not been told by a physician that he or she has a diagnosed impairment due to OP. Such an interpretation could not have been reasonably intended by the Legislature. In syllabus point 2 of Sheena H. v. Amfire, LLC , 235 W.Va. 132, 772 S.E.2d 317 (2015), this Court confirmed:
It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity. Syl. Pt. 2, Click v. Click , 98 W.Va. 419, 127 S.E. 194 (1925).
Accord , syl. pt. 4, Lewis County Board of Education v. Holden , 234 W.Va. 666, 769 S.E.2d 282 (2015).
If a claimant for OP benefits is unable to meet the first time limitation set forth in W.Va. Code , 23-4-15(b) [2010], a further opportunity to file a claim is provided by the second time limitation, namely, filing within three years after a diagnosed impairment due to OP is made known to the claimant by a physician. The statute, therefore, takes into account the progressive nature of the disease, yet precludes unsubstantiated, repeated claims which would unreasonably burden the Occupational Pneumoconiosis Board. In the present matter, the current OP claims could have reached the OP Board for analysis, if the applications had indicated a diagnosed impairment due to OP and were filed within the second time limitation under W.Va. Code , 23-4-15(b) [2010]. Otherwise, benefits cannot be awarded on a diagnosis of OP alone.
Consequently, this Court holds that where a claim for occupational pneumoconiosis benefits has been denied, a new application may be filed, in cases not involving the death of the claimant, based on the same date of last exposure as the prior claim, if filed pursuant to the first time limitation and attendant requirements of W.Va. Code , 23-4-15(b) [2010]: within three years of the date of last exposure to occupational dust. If not filed within that time limitation, a new application for benefits may be filed pursuant to the second time limitation of W.Va. Code , 23-4-15(b) [2010]: within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician. Under the second time limitation, the new application, will not be referred to the Occupational Pneumoconiosis Board unless the Physician's Report filed with the claimant's new application sets forth a diagnosed impairment due to occupational pneumoconiosis.[10]
Here, the prior claims of Pennington, Arthur and West were referred to the Occupational Pneumoconiosis Board and ultimately failed to result in an award of benefits. None of their current claims include a diagnosed impairment due to OP. All three Physician's Reports state that it is unknown whether their capacity for work has been impaired by OP. Pennington, Arthur and West insist, nevertheless, that their claims be referred to the OP Board. Under their theory, if their current claims are unsuccessful before the OP Board, W.Va. Code , 23-4-15(b) [2010], authorizes them to file similar, unsupported claims again and again, with a time limit only imposed *635 when a physician informs them of a diagnosed impairment. This Court finds that interpretation notably unconvincing, and we conclude, as did the Board of Review, that the claims should not go forward.
Finally, Keffer's application for OP benefits was filed six years after his date of last exposure. Unlike Pennington, Arthur and West, he had no prior OP claims. Keffer's radiology report was negative for OP, and his Physician's Report revealed that it was unknown whether he had contracted OP and unknown whether his capacity to work was impaired by OP. The record indicates that the Physician's Report, as well as the earlier "black lung exam," were completed by a nurse practitioner. Although the Physician's Report listed a diagnosis of "coal dust exposure," the Claim Administrator noted that "coal dust exposure" is not a legitimate diagnosis in an OP claim. Upon review, this Court finds no basis upon which to overturn the denial of Keffer's claim. Like Pennington, Arthur and West, Keffer would be free to file a claim within three years of receiving a diagnosed impairment due to occupational pneumoconiosis.
VII. Conclusion
This Court concludes that the current claims of Pennington, Arthur, West and Keffer for occupational pneumoconiosis benefits were properly denied by the Board of Review pursuant to W.Va. Code , 23-4-15(b) [2010]. The decisions of the Board in all four cases are, therefore, affirmed.
Affirmed .
CHIEF JUSTICE WORKMAN dissents and reserves the right to file a dissenting Opinion.
JUSTICE LOUGHRY suspended and therefore not participating, and JUSTICE FARRELL sitting by temporary assignment.
These consolidated appeals involve three coal miners and one factory worker with decades of occupational dust exposure including asbestos, silica, and/or coal dust. At their essence, these appeals represent claimants who filed workers' compensation claims seeking to be examined by the Occupational Pneumoconiosis (OP) Board. By utilizing an inapplicable statute of limitations to bar even the filing of a claim, today's opinion is an extreme departure from the long-standing rule of law firmly established in the management of OP claims. The majority is way too eager to radically rewrite West Virginia Code § 23-4-15(b) (2017) with far-reaching and grotesquely unfair consequences. It demonstrates either an ignorance of the law or a callous disregard for those who suffer from OP. While the majority claims to be against judicial activism, apparently it will make exceptions as its agenda requires. Accordingly, I vehemently dissent.
As discussed below, West Virginia law explicitly acknowledges that OP is both a latent and a progressive disease. For this reason, a claimant suffering from OP is not barred from filing multiple claims long after retirement, within certain parameters, to obtain physical examinations from the experts in this field, the OP Board. Fenton Art Glass Co. v. W.Va. Office of Ins. Comm'r , 222 W.Va. 420, 428, 664 S.E.2d 761, 769 (2008). Serial claims have always been the nature of the OP beast; they have been fully contemplated in the statutes, regulations, and caselaw over the last fifty years.
In order to file a claim for OP benefits, a claimant must meet the jurisdictional requirements of West Virginia Code § 23-4-1(b) (2017).[1] While allowing for serial claims *636 in light of the progressive nature of the disease, the legislation imposes two outer limitations periods that may serve to bar a claim. A claimant must file within the statute of limitations as set forth in West Virginia Code § 23-4-15(b) :
To entitle any employee to compensation for occupational pneumoconiosis under the provisions of this subsection, the application for compensation shall be made on the form or forms prescribed by the Insurance Commissioner, and filed with the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis or within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician and unless filed within the three-year period, the right to compensation under this chapter is forever barred, such time limitation being hereby declared to be a condition of the right and hence jurisdictional, or, in the case of death, the application shall be filed by the dependent of the employee within two years from and after the employee's death, and such time limitation is a condition of the right and hence jurisdictional.
Thus, there are two outer time limitations, after which a claim is barred: 1) three years "after the last day of the last continuous period of sixty days" of exposure; or 2) three years "after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician." Id . (emphasis added). These are, of course, merely limitations periods which ultimately may bar a claim. They do not-nor do they purport to-create a substantive, evidentiary threshold showing necessary by a claimant to obtain an evaluation by the OP Board.[2]
The majority, however, utilized this statutorily enacted "discovery rule" in precisely this manner. The very narrow issue before the Court is whether a claimant must proffer a "diagnosed impairment" before he is able to obtain an evaluation by the OP Board. Utilizing the codified OP discovery rule embodied in West Virginia Code § 23-4-15(b), the majority purported to answer that question. Yet, evading the real issue, the majority holds: "Under the second time limitation, the new application, [sic] will not be referred to the Occupational Pneumoconiosis Board unless the Physician's Report filed with the claimant's new application sets forth a diagnosed impairment due to occupational pneumoconiosis." However, it is nonsensical to convert the language of the statute of limitations into a new, substantive, threshold evidentiary requirement to filing subsequent claims. The majority missed the entire point of this appeal. The majority fully conflates substantive evidentiary requirements with this statute of limitations -two distinct legal concepts. The result of this extraordinary fusion is catastrophic and legally fallacious. It represents a remarkable feat of statutory contortion.
A claimant has never been required to bear the burden and expense of having pulmonary function tests performed and evaluated before filing a claim. Because "it is and has been the function of the OP Board to determine all medical questions relating to cases of compensation for occupational pneumoconiosis *637 . W.Va. Code § 23-4-8a (2005)." Fenton , 222 W.Va. at 431, 664 S.E.2d at 772. Moreover, " 'the percentage of permanent disability is determined by the degree of medical impairment that is found by the occupational pneumoconiosis board.' W.Va. Code § 23-4-6a (2005)." Fenton , 222 W.Va. at 431, 664 S.E.2d at 772. It is therefore nonsensical to require a claimant to produce evidence of the very thing the OP Board serves to provide before being permitted to present one's claim to the OP Board.
The majority completely distorts the plain language of West Virginia Code § 23-4-15(b), which merely provides a time limit for the filing of workers' compensation claims for OP and creates out of whole cloth a new requirement for filing by holding these claimants must have a physician's diagnosis of impairment due to OP. I am appalled that the majority would ignore established precedent and West Virginia Code § 23-4-8c(e), which provides a claimant may file a new claim for OP (three years from the date of the last OP Board's decision) if his or her earlier filings were premature, considering the progressive nature of this dreadful disease.[3] The majority's analysis of this important issue is woefully under-developed and its conclusion is blatantly wrong.[4]
Inexplicably, the majority relegates the most relevant case to the issue before us- Lester v. State Workmen's Compensation Commissioner , 161 W.Va. 299, 242 S.E.2d 443 (1978) -to a footnote. The Lester Court recognized forty years ago that OP "often does not become manifest until years after the victim was last exposed to the causes of the disease." Id . at 303, 242 S.E.2d at 445. The majority disregards this Court's declaration that "the legislature has expressly abandoned any fixed and rigid time restrictions within which a claim for occupational pneumoconiosis benefits must be filed and has opted instead for a limitation period based on the claimant's discovery of the occupational disease." Id . at 302, 242 S.E.2d 443. The Lester Court examined previous amendments to West Virginia Code § 23-4-15,[5] and recognized
[t]he legislature's actions signify an awareness that occupational pneumoconiosis may go undetected for a long time, for this disease often does not become manifest until years after the victim was last exposed to the causes of the disease. The amendments also manifest legislative recognition of the fact that a fixed and rigid time restriction on the filing of a claim would occasionally result in a harsh and unjust result. It would serve as a trap for the unwary worker whose claim would be barred for an injury which was unknown to him at the time filing was required. A set time limitation could conceivably lapse before the symptoms of this insidious disease became evident or before the disease results in disability. It was just this kind of result the legislature expressly sought to prevent.
Id . at 302-03, 242 S.E.2d at 445.
The necessary implication arising from Lester and the Legislature's liberalizing amendments of the statute is a legislative intent to ensure that workers who have contracted OP must have a reasonable opportunity, after learning of its presence, to present subsequent claims for the remainder of their lives in order to receive examinations to determine their entitlement to benefits. Requiring *638 claimants to have the very thing they seek to obtain from the OP Board before they may reach the OP Board creates an entirely new and frankly preposterous requirement.
The majority's confusion is occasioned by its misreading of the statute of limitations contained in West Virginia Code § 23-4-15(b). The statute provides for a "discovery rule"-a codification of this common law principle. The statute of limitations for an OP claim, much as a traditional statute of limitations, is three years from effectively the date of last exposure. The discovery rule provided in the alternative allows for three years from a "diagnosed impairment." The second time limitation set forth in West Virginia Code § 23-4-15(b), is only triggered "after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician." Consequently, a claim is only time barred when a claimant has not filed within three years after he or she receives a diagnosed impairment, from whatever medical provider.
As to these claimants, the second time limitation set forth in West Virginia Code § 23-4-15(b) has not triggered. The claimants submitted medical evidence of OP diagnoses, but their physicians have not diagnosed impairment due to OP. Accordingly, the claims are not time barred and these claimants should have been referred to the OP Board for further examinations.
Our Legislature has long recognized that OP evolves into a chronic and progressive respiratory disease that may lay dormant for years before totally disabling and killing many of these coal miners. Lester , 161 W.Va. 299, 242 S.E.2d 443. The progressive nature of pneumoconiosis demands reading West Virginia Code § 23-4-15(b) in a literal manner to ensure that any worker afflicted with the disease, including its progressive form, is given an appropriate opportunity to appear before the OP Board for subsequent examinations.
This conclusion is consistent with the Federal Mine Safety and Health Act's ("Federal Act") treatment of subsequent OP claims.[6] The Federal Act explicitly recognizes that pneumoconiosis is a "latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c).
Based on this understanding of OP, courts examining the Federal Act acknowledge that "nothing bars or should bar claimants from filing claims seriatim, and the regulations recognize that many will." Lisa Lee Mines v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor , 86 F.3d 1358, 1362 (4th Cir. 1996) ; see also Arch of Kentucky, Inc. v. Dir., Office of Workers' Comp. Programs , 556 F.3d 472, 481 (6th Cir. 2009) (recognizing restrictive interpretation on statute of limitation would be in tension with Federal Act's provision permitting successive claims when limitations period begins after medical determination of OP).
The majority holds otherwise based on its irrational fear that repeat claims "would unreasonably burden" the OP Board. However, the Annual Report of the OP Board belies this false alarm. From July 1, 2015 to June 30, 2016, the OP Board performed repeat examinations on 321 claimants and 131 of them (41%) received an additional award.[7] From July 1, 2016 to June 30, 2017, the OP Board performed repeat examinations on 409 claimants and 179 of them (44%) received an additional award.[8] The very fact that these successive claims are regularly permitted-and result in additional OP awards-is strong evidence of the deteriorating health of workers exposed to occupational dust and the need for subsequent examinations considering *639 the progressive nature of this disease. Moreover, these results make the majority's interpretation of the statute of limitations-that effectively impedes such subsequent claims-completely untenable.
Across America, OP claims the lives of almost 1,500 coal miners every year.[9] "It's as if the Titanic sank every year, and no ships came to the rescue. While that long-ago disaster continues to fascinate the nation, the miners slip into cold, early graves almost unnoticed."[10] In light of this ongoing tragedy, our Legislature has implemented statutes and regulations to ensure workers exposed to the hazards of OP receive follow-up medical examinations for the remainder of their lives so that they may receive appropriate compensation. Yet, the majority rewrites long-standing legislation, ignores this Court's precedent, and creates new law encumbering workers' access to the OP Board. The majority either grossly misunderstands these legal principles or chooses to show gross insensitivity to the plight of West Virginia's coal miners.[11]

All four of Pennington's prior OP claims, nos. 850018570, 900019489, 9300062421 and 2001003946, were referred to the Occupational Pneumoconiosis Board, and, in all four, the OP Board found insufficient evidence to make a diagnosis of OP. In the last of the prior OP claims, no. 2001003946, the Occupational Pneumoconiosis Board's October 31, 2000, report stated that there was insufficient pleural or parenchymal (elemental) evidence to establish a diagnosis of occupational pneumoconiosis.

The Claim Administrator stated: "Your claim is considered to be a duplicate of prior claim 2001003946 and is denied on the basis of no additional exposure."

Arthur's two prior claims, nos. 970058770 and 2002026846, were referred to the Occupational Pneumoconiosis Board, and, in both, the OP Board found insufficient evidence to make a diagnosis of OP. In the latter claim, no. 2002026846, the Occupational Pneumoconiosis Board's February 14, 2002, report stated that there was insufficient pleural or parenchymal (elemental) evidence to establish a diagnosis of occupational pneumoconiosis. Arthur's date of last exposure in that claim, no. 2002026846, was listed as January 2000.

West retired on June 1, 2003. His prior claim, no. 2007212246 (a/k/a no. 2006032303), listed 2003 as his date of last exposure. The Physician's Report stated "possible OP" but indicated no impairment of West's capacity to work. In its October 5, 2006, report, the Occupational Pneumoconiosis Board found insufficient evidence to make a diagnosis of OP, i.e. , there was insufficient pleural or parenchymal (elemental) evidence to establish a diagnosis of occupational pneumoconiosis.

Syllabus point 2 of Gill v. City of Charleston , 236 W.Va. 737, 783 S.E.2d 857 (2016), holds: "Pursuant to W.Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence." See syl. pt. 1, Staubs v. State Workmen's Comp. Comm'r , 153 W.Va. 337, 168 S.E.2d 730 (1969) ("A claimant in a workmen's compensation proceeding has the burden of proving his claim."). Accord , syl. pt. 2, Clark v. State Workmen's Comp. Comm'r , 155 W.Va. 726, 187 S.E.2d 213 (1972).

Occupational pneumoconiosis is a progressive disease. See W.Va. Code , 23-4-16(a)(2) [2005], (Occupational pneumoconiosis is medically recognized as progressive in nature). See also Lester v. State Workmen's Comp. Comm'r , 161 W.Va. 299, 303, 242 S.E.2d 443, 445 (1978) (Occupational pneumoconiosis"often does not become manifest until years after the victim was last exposed to the causes of the disease.").

W.Va. Code , 23-4-8c(a) [2009], provides that the Occupational Pneumoconiosis Board's report in an OP claim shall include "its findings and conclusions on every medical question in controversy." Specifically, subsection (c) of that statute provides, in part, that the findings and conclusions of the Board shall determine whether the claimant "has contracted occupational pneumoconiosis and, if so, the percentage of permanent disability resulting therefrom."

The three year bar in W.Va. Code , 23-4-8c(e) [2009], is not in contention herein. Pennington, Arthur and West's current claims were filed approximately fifteen, thirteen and nine years respectively after the last OP Board decision in their prior claims. Keffer had no prior claim. Moreover, we note that the four appeals before us do not involve previously filed, but unruled upon, OP claims, or requests to modify rulings in prior OP claims.

West Virginia Code of State Rules § 85-20-52.1, sets forth the following requirements for an application for OP benefits:
A properly completed application must be received before the potential claim will be considered by the Commission, Insurance Commissioner, private carrier or self-insured employer, whichever is applicable. A properly completed application must include 1) a completed WC-105 form; 2) a completed WC-205 form; 3) an ILO form properly completed by a certified "B" reader, and 4) a listing of all alleged exposures to harmful dust, including type of dust, and extent and duration of exposure with each named employer.

We find no conflict between the required "diagnosed impairment due to occupational pneumoconiosis" of W.Va. Code , 23-4-15(b) [2010], and the "presumption clause" found in W.Va. Code , 23-4-8c(b) [2009]. The latter provision states:
If it can be shown that the claimant or deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his or her employment for a period of ten years during the fifteen years immediately preceding the date of his or her last exposure to such hazard and that the claimant or deceased employee has sustained a chronic respiratory disability, it shall be presumed that the claimant is suffering or the deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption is not conclusive.

West Virginia Code § 23-4-1(b) provides, in part:
For the purposes of this chapter, the terms "injury" and "personal injury" include occupational pneumoconiosis and any other occupational disease, as hereinafter defined, and workers' compensation benefits shall be paid to the employees of the employers in whose employment the employees have been exposed to the hazards of occupational pneumoconiosis or other occupational disease and have contracted occupational pneumoconiosis or other occupational disease, or have suffered a perceptible aggravation of an existing pneumoconiosis or other occupational disease, or to the dependents, if any, of the employees, in case death has ensued, according to the provisions hereinafter made: Provided, That compensation is not payable for the disease of occupational pneumoconiosis, or death resulting from the disease, unless the employee has been exposed to the hazards of occupational pneumoconiosis in the State of West Virginia over a continuous period of not less than two years during the 10 years immediately preceding the date of his or her last exposure to such hazards, or for any five of the 15 years immediately preceding the date of his or her last exposure.

Rather, it is West Virginia Code of State Rules § 85-20-52.1 that sets forth the evidentiary requirements for filing an application for OP benefits:
A properly completed application must be received before the potential claim will be considered by the Commission, Insurance Commissioner, private carrier or self-insured employer, whichever is applicable. A properly completed application must include 1) a completed WC-105 form; 2) a completed WC-205 form; 3) an ILO form properly completed by a certified "B" reader; and 4) a listing of all alleged exposures to harmful dust, including type of dust, and extent and duration of exposure with each named employer.

The majority barely mentions West Virginia Code § 23-4-8c(e) in a footnote and states it "is not in contention" here because the "appeals before us do not involve previously filed, but unruled upon, OP claims, or requests to modify rulings in prior OP claims." However, West Virginia Code § 23-4-8c(e) is clearly implicated in these consolidated appeals because it expressly covers a claimant "filing a new claim[.]" Id .

In the discussion section, the majority cites only two workers' compensation cases.

Effective July 1, 1971, the statute provided:
To entitle any employee to compensation for occupational pneumoconiosis ... the application ... must be ... filed ... within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis, or within three years from and after the employee's occupational pneumoconiosis was made known to him by a physician or which he should reasonably have known, whichever shall last occur .... 1971 W.Va.Acts ch. 177.
Lester , 161 W.Va. at 301 n.2, 242 S.E.2d at 445 n.2.

See 30 U.S.C. § 801 to § 964 (1977). Under the Federal Act, any claim for benefits "shall be filed within three years after whichever of the following occurs later-(1) a medical determination of total disability due to pneumoconiosis; or (2) March 1, 1978." 30 U.S.C. § 932(f). The implementing regulation, 20 C.F.R. § 725.308, further explains that the three-year statute of limitations is triggered when the miner receives a medical determination of total disability arising from pneumoconiosis. See Consolidation Coal Co. v. Williams , 453 F.3d 609, 615 (4th Cir. 2006).

West Virginia Occupational Pneumoconiosis Board 2016-2017 Annual Report, http://www.wvlegislature.gov/legisdocs/reports/agency/I02_FY_2017_13746.pdf

Id .

Brian L. Hager, Is There Light at the End of the Tunnel? Balancing Finality and Accuracy for Federal Black Lung Benefits Awards , 60 Wash. & Lee L. Rev. 1561, 1562-63 (2003).

Gardiner Harris & Ralph Dunlop, Dust, Deception, and Death: Why Black Lung Hasn't Been Wiped Out , Courier-J. (Louisville, Ky.), Apr. 19, 1998 (examining number of death certificates listing pneumoconiosis as cause of death), http://www.courierjournal.com/dust/.

See e.g. , Brian C. Murchison, Due Process, Black Lung, and the Shaping of Administrative Justice , 54 Admin. L. Rev. 1025, 1028 (2002) (chronicling protracted litigation in federal black lung case of West Virginia coal miner Harold Terry who worked nineteen years in coal mining before federal law mandated dust controls, and another ten years, shoveling coal, working drill, and replacing belts; Mr. Terry's health deteriorated dramatically, with multiple lung collapses and surgeries, long after his exposure to coal dust ended).