In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2354

IN RE:

CHICAGO MANAGEMENT CONSULTING GROUP, INC.,

*Debtor.*

HORACE FOX, as Chapter 7 Trustee for
the Estate of Chicago Management
Consulting Group, Inc.,

*Plaintiff-Appellee,*

*v.*

JULIA HATHAWAY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 8917 — **Jorge L. Alonso**, *Judge.*

ARGUED SEPTEMBER 28, 2018 — DECIDED JULY 10, 2019

Before RIPPLE, SYKES, and SCUDDER, *Circuit Judges.*

SYKES, *Circuit Judge.* Frank Novak tragically took his own life in February 2012. He left his company, Chicago

Management Consulting Group, Inc., to his close friend Debra Comess. She was not in a position to manage the struggling firm, so she initiated bankruptcy proceedings almost immediately after Novak's death.

The Chapter 7 Trustee discovered numerous transfers from Chicago Management Consulting Group's coffers to Comess and Julia Hathaway—another Novak companion who ran a small yoga studio. Believing the transfers to be fraudulent under the Bankruptcy Code, the Trustee sought to reclaim their value for the Estate. After a bench trial, the bankruptcy judge ruled that the transfers to Comess and Hathaway were voidable on grounds of actual and constructive fraud and imposed sanctions on Hathaway for discovery lapses. The district court affirmed.

Comess settled her case; this appeal concerns the transfers to Hathaway. She launches several arguments. First, she contends that the bankruptcy judge committed clear error by ignoring one of the Trustee's trial exhibits when evaluating the company's financial health. Second, she challenges the bankruptcy judge's finding that the company did not receive reasonably equivalent value in return for its transfers. Third, she argues that the company did not have "creditors" under the Illinois Uniform Fraudulent Transfer Act ("IUFTA" or "the Act") at the time of the transfers. Finally, Hathaway vigorously disputes the sanctions ruling.

We affirm. As a preliminary matter, Hathaway failed to comply with multiple rules of appellate procedure. On the merits, our review of a bankruptcy court's factual findings is constrained; we reverse only for clear error. Not one of Hathaway's arguments meets this high bar. The bankruptcy judge was amply justified when he concluded that the

company was insolvent, the transfers to Hathaway were gratuitous, and the company had creditors under the Act. And we see no reason to disturb the imposition of discovery sanctions.

## I. Background

Novak was the sole shareholder of Chicago Management Consulting Group, an information-technology consulting firm he started in 1997. His primary client was BP America. By 2008 the company's solvency was questionable. In February 2012 Novak committed suicide, leaving his company to his good friend Debra Comess. She was not equipped to run the firm, so she initiated bankruptcy proceedings, filing a voluntary Chapter 7 petition in the Northern District of Illinois on May 2, 2012.

For four years prior to the bankruptcy filing, Comess and Julia Hathaway, another close friend of Novak's, had received significant payments from the company, though they were not employees. Hathaway alone received $45,400.81 between 2008 and 2012. Hathaway runs a small yoga studio, and her email correspondence with Novak during this period suggests that the payments were personal, not professional. The emails document Hathaway's repeated requests for gifts and payments and Novak's expressions of affection for her and willing acquiescence in her requests.

Trustee Horace Fox brought an avoidance action targeting the transfers to Comess and Hathaway. He later moved for sanctions against Hathaway alleging dilatory behavior during discovery.

The bankruptcy judge determined that the women had indeed received money from Chicago Management Consult-

ing Group and that Novak typically failed to record the transactions. The judge also found that the company was insolvent at the time of the transfers, relying on an accounting expert's report introduced by the Trustee. The judge rejected Hathaway's argument that a list of gross receivables proffered by the Trustee refuted the expert's conclusion.

Moving on, the judge ruled that the company did not receive reasonably equivalent value in exchange for its transfers to Hathaway. He based this finding on evidence of Novak's close personal relationship with her, his habit of paying for her personal expenses on demand, the lack of evidence that Hathaway performed any work for the company, the irregularity and vagueness of her apparently hastily prepared invoices, and the inconsistency of those invoices with the company's bank records.

The judge concluded that the transfers were voidable as actually and constructively fraudulent under 11 U.S.C. § 548 and the IUFTA. The latter applied via § 544(b)(1) of the Code because the Trustee had established that the consulting firm had "at least one [unsecured] creditor" at the time of the conveyances—the Internal Revenue Service—and that an unpaid credit-card company counted as another.

The judge took a cautious approach to the Trustee's motion for discovery sanctions. He declined to impose sanctions for Hathaway's failure to respond to interrogatories and produce tax returns. And although Hathaway was slow to turn over certain emails despite multiple discovery orders, the judge was satisfied that she had generally complied and that much of the delay was caused by her email service provider. Finally, the judge considered a set of emails that Hathaway unquestionably possessed but failed to produce.

He found that those emails were improperly omitted but that they contained no relevant information. In the end, the judge determined that sanctions were appropriate only to the extent that Hathaway's delay and failure to comply with court orders caused the Trustee to expend additional time and resources litigating the recurring discovery disputes. He ordered "payment of the [T]rustee's attorney fees and expenses reasonably incurred in pursuing the discovery matters." The judge later entered judgment against Hathaway for the fraudulent conveyances in the amount of $45,400.81 and imposed $11,187.25 in discovery sanctions.

Hathaway appealed to the district court under 28 U.S.C. § 158(a)(1). The district judge affirmed across the board. He discerned no clear error in the bankruptcy judge's finding that Chicago Management Consulting Group was insolvent. He was unimpressed by Hathaway's attempts to contradict the finding that the company had not received value for its transfers. Nor did he see fit to question the bankruptcy court's identification of unsecured creditors for § 544(b) purposes. On the issue of discovery sanctions, he deferred to the bankruptcy judge's broad discretion and found no reason to set aside the award.

## II. Discussion

Hathaway's appeal repeats the arguments she raised in district court. We note at the outset that she did not approach this appeal with the seriousness our rules demand. She failed to provide an adequate record to facilitate our review. Because she claims that several of the bankruptcy court's factual findings were unsupported by the evidence, it was her responsibility to "include in the record a transcript of all evidence relevant to that finding or conclusion." FED.

R. App. P. 10(b)(2); *see also* Fed. R. Bankr. P. 8009(b)(5). Relevant evidence "generally … include[s] a complete transcript of the trial along with the exhibits properly admitted into evidence." *LaFollette v. Savage*, 63 F.3d 540, 544 (7th Cir. 1995).

The most glaring omission is the expert report upon which the bankruptcy court based its insolvency ruling. That report, compiled by Trustee's expert Lois West, was not delivered to us until after oral argument.[1] Frustratingly, Hathaway has been on notice of this deficiency since the district judge noted the absence of the West report from the record. *Comess v. Fox* (*In re Chi. Mgmt. Consulting Grp., Inc.*), 569 B.R. 722, 728 n.7 (N.D. Ill. 2017). So we're left to interpret a portion of the West report's raw data reproduced in Hathaway's appellate brief. Finally, Hathaway's appendix is incomplete under our circuit rules. It includes only the district judge's opinion, not the bankruptcy judge's opinion. *See* 7th Cir. R. 30(b)(2).

These serious errors could justify dismissal. *See Tapley v. Chambers*, 840 F.3d 370, 375 (7th Cir. 2016) (explaining that we may dismiss an appeal when the appellant has "ample opportunity to correct" a deficiency in the record and fails to do so); *see also Urso v. United States*, 72 F.3d 59, 61 (7th Cir. 1995) ("[We] decline[] to entertain [an] appeal[] when the appellant does not file a required appendix."). We nevertheless choose to reach the merits, where Hathaway fares no better.

---

[1] Following oral argument, Hathaway moved to supplement the record with a copy of the West report. We denied that motion.

**A. Insolvency Analysis**

We apply "*de novo* review for the bankruptcy court's conclusions of law and clear error review for its findings of fact." *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013). Demonstrating clear error is no mean feat. "When there are two permissible views of the evidence, the … choice between them cannot be clearly erroneous." *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010). We will not reverse the court's factual findings without a "definite and firm conviction" that it erred. *Unsecured Creditors Comm. of Sparrer Sausage Co. v. Jason's Foods, Inc.*, 826 F.3d 388, 393 (7th Cir. 2016).

The Trustee's fraudulent-transfer claims rest on 11 U.S.C. § 548 and the IUFTA, 740 ILL. COMP. STAT. 160/5 (2010). Each statute has actual- and constructive-fraud provisions. Actual fraud under § 548 can be proven by circumstantial evidence, including the size of the transfer in relation to the debtor's assets. *Frierdich v. Mottaz* (*In re Frierdich*), 294 F.3d 864, 869–70 (7th Cir. 2002). The IUFTA considers insolvency to be a "badge" of actual fraud. § 160/5(b)(9). Under the constructive-fraud component of § 548, a trustee can avoid any transfer for which the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation[] and was insolvent on the date that such transfer was made or such obligation was incurred." § 548(a)(1)(B); *accord* § 160/5. Thus, whether Chicago Management Consulting Group was insolvent when Novak transferred funds to Hathaway was a crucial issue for the bankruptcy court.

Under federal and state fraudulent-transfer law, a debtor is insolvent if it has "a balance sheet on which liabilities exceed assets." *See Baldi v. Samuel Son & Co., Ltd.*, 548 F.3d

579, 581 (7th Cir. 2008); *Grochocinski v. Zeigler* (*In re Zeigler*), 320 B.R. 362, 379 (Bankr. N.D. Ill. 2005); *see also* 11 U.S.C. § 101(32)(A) (defining "insolvent"); 740 ILL. COMP. STAT. 160/3(a) (same). If a willing buyer would not purchase the debtor's combined assets and liabilities, the debtor is insolvent. *Covey v. Commercial Nat'l Bank of Peoria*, 960 F.2d 657, 660 (7th Cir. 1992). A trustee doesn't need to show insolvency on the precise day of the transfer. If he can demonstrate that the debtor was insolvent at points before and after the transfer, it's up to the transferee to rebut the presumption of insolvency in between. *Baldi*, 548 F.3d at 581.

Relying on the West report, the bankruptcy judge found that the company was insolvent during the relevant period. Lois West, a trained accountant, analyzed records kept by Novak using QuickBooks accounting software. According to the judge, the data clearly showed that the company's liabilities exceeded its assets when the transfers were made. As we've noted, Hathaway included only a partial reproduction of the report in her appellate submission. Even based on her version of events, West calculated a negative valuation for the company at every six-month interval between June 30, 2008, and December 31, 2011. Thus, so long as the bankruptcy judge accepted the veracity of the QuickBooks data and the reliability of West's methods, a finding of insolvency was inevitable.

Hathaway argues that the judge committed clear error when he chose to credit the West report rather than Trustee Exhibit 32. That document is simply a list of dollar figures labeled "Receivables from BP According to deposits and wire transfers to Acct xx 7854." Its attractiveness to Hathaway is obvious: Exhibit 32 shows over $2.6 million in

accounts receivable over the crucial 2008–2012 period. Seizing the chance to cast doubt on the West report, Hathaway adds the receivables from Exhibit 32, subtracts liabilities, and proclaims that the company was in the black.

Exhibit 32 is not the panacea Hathaway makes it out to be. As the judge explained, its figures don't rebut West's topline finding of insolvency. Indeed, the receivables listed in Exhibit 32 are wholly consistent with West's conclusion. When the company's contractors performed work for BP, they generated accounts payable to *themselves* in addition to accounts receivable for the company. So a significant portion of the incoming cash from BP was offset by the company's obligations to its contractors. Because the West report considered "all three accounting categories—accounts receivable, cash, and accounts payable," it offered the most complete picture of the company's solvency. Even accounting for outstanding receivables generated by company contractors, the firm's liabilities exceeded its net asset value.

Hathaway asks us to add *gross* receivables to the West report's asset figures to generate a new valuation for the company. But only *net* receivables are relevant. Hathaway advanced these same arguments in the bankruptcy and district courts, to no avail. She offers nothing new to support her position. In sum, she hasn't come close to showing clear error.

## B. Reasonably Equivalent Value

Hathaway also challenges the bankruptcy judge's finding that the company did not receive reasonably equivalent value for its transfers. Under both § 548 and the IUFTA, a debtor's failure to receive value is a necessary element of

constructive fraud. *Leibowitz v. Parkway Bank & Tr. Co.* (*In re Image Worldwide, Ltd.*), 139 F.3d 574, 577 (7th Cir. 1998) (explaining that cases applying the no-value requirement of § 548 can be used to evaluate the same question under the Act). Courts consider "the fair market value of what was transferred and received, whether the transaction took place at arm's length, and the good faith of the transferee." *Smith v. SIPI, LLC* (*In re Smith*), 811 F.3d 228, 240 (7th Cir. 2016). Whether value was given is a question of fact reviewed only for clear error. *In re Image Worldwide*, 139 F.3d at 576.

Hathaway argues that she provided labor value commensurate with the money she received from the firm. She cites her education, work experience, and one line of the trial transcript in which she mentions consulting work she did for the company. She also directs our attention to a set of self-prepared invoices, which she claims provide the requisite documentation of her work. But as the courts below observed, her invoices are strikingly brief and inconsistent. And they conflict with Hathaway's own testimony, in which she stated that she billed the company by recording out-of-pocket expenses, hours worked, and her hourly rate. The invoices offer vague descriptors like "Workshop Preparation" and "Management Consulting" but make no attempt at itemization. Nor do they match the company's bank records. The invoices are simply not compelling. It's clear why the bankruptcy court placed so little stock in them.

The bankruptcy judge cited plenty of evidence beyond the invoices to support his conclusion that the transfers were gratuitous. Novak evidently had no qualms about spending considerable sums on Hathaway with no obvious connection to professional services. To illustrate: On October 13, 2009,

Hathaway demanded reimbursement for $119.10 in personal cosmetic expenses. "I adore you," Novak replied. About three weeks later, a check for that precise amount was paid by the company to Hathaway. This exchange was no outlier; Novak satisfied repeated requests for personal gifts from flowers to perfume. He even outfitted her yoga studio with mats and other equipment.

Hathaway acknowledges the pattern of gratuitous spending but argues that she always viewed those expenditures as gifts from Novak *personally*, not from the company. But Hathaway's description of her state of mind, while not entirely irrelevant, doesn't impeach the judge's conclusion nearly enough to show clear error.

Hathaway invites us to reinterpret the evidence presented at trial, crediting her version of events over the judge's. But even if Hathaway's story is one of "two permissible views of the evidence"—which we doubt—that is insufficient to show clear error. *Dexia Crédit Local*, 629 F.3d at 628.

## C. Creditors under the IUFTA

Under 11 U.S.C. § 544(b)(1), trustees can utilize state fraudulent-conveyance statutes in bankruptcy proceedings. Section 544(b) enables a trustee to step into the shoes of an unsecured creditor who existed at the time of the transfer and vindicate that creditor's state-law rights. The trustee can "avoid any transaction of the debtor that would be voidable by any actual unsecured creditor under state law. The trustee need not identify the creditor, so long as the unsecured creditor exists." *In re Image Worldwide*, 139 F.3d at 576–77 (citation omitted). The bankruptcy judge found that Chicago Management Consulting Group owed money to the

IRS and was carrying credit-card debt at the time of the transfers.

Hathaway points to no evidence contradicting those findings. She doesn't even challenge the existence of the company's tax obligation or credit-card debt, arguing instead that those obligations were "nominal" and not "due and payable." And if Hathaway wished to challenge the judge's *legal* conclusion that these creditors and their claims qualified under § 544(b) and triggered the IUFTA, she waived that argument by failing to develop it. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 921 (7th Cir. 1997) ("[F]ailure to cite authorities in support of a particular argument constitutes a waiver of the issue.").

### D. Discovery Sanctions

We review a bankruptcy court's imposition of discovery sanctions for abuse of discretion. *Golant v. Levy* (*In re Golant*), 239 F.3d 931, 937 (7th Cir. 2001). We cannot substitute our own judgment, nor do we require the judge to choose the least severe sanction. *Id.* Instead, we ask whether a "reasonable jurist, apprised of all the circumstances, would have chosen [the sanction] as proportionate to the infraction." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998).

Hathaway devotes most of her brief to an attack on the judge's sanctions order. She claims the Trustee was unable to show prejudice stemming from her actions and that opposing counsel inflated the hours they allegedly spent handling discovery disputes. She says she ultimately complied with all discovery orders and blames Google for email production delays. And she even intimates that the Trustee should be sanctioned for his attorneys' conduct.

The judge did not abuse his discretion. The fees that were awarded are reasonably related to the Trustee's efforts to litigate discovery. Although the judge was eventually convinced that the gaps and delays in Hathaway's email production hadn't obscured crucial information, the time spent litigating those matters burdened both the Trustee and the court. Acting within his broad discretion, the judge concluded that Hathaway should pay the legal bills incurred by the Trustee while fighting those discovery battles. And he attached an itemized breakdown of the fees he awarded—and did not award. He even cut in half the fees claimed by one of the Trustee's attorneys, citing "unnecessary time." Discovery sanctions are upheld "so long as [they] could be considered reasonable." *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009). These were reasonable sanctions.

**E. Rule 38 Sanctions**

The Trustee argues that Hathaway should be sanctioned under Rule 38 of the Federal Rules of Appellate Procedure for filing a frivolous appeal. But a request for Rule 38 sanctions must be made by separate motion. *Berkson v. Gulevsky* (*In re Gulevsky*), 362 F.3d 961, 964 (7th Cir. 2004). The Trustee merely requests sanctions in a section of his appellate brief. As we've explained before, a "brief-borne request is not a separately filed motion." *McDonough v. Royal Caribbean Cruises, Ltd.*, 48 F.3d 256, 258 (7th Cir. 1995). We therefore decline to address the issue.

AFFIRMED