IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0209

_____

FILED
May 1, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ARGUS ENERGY, LLC,
Petitioner,

v.

CLIFFORD MARENKO,
Respondent.

_____

Appeal from the West Virginia
Workers' Compensation Board of Review
BOR Appeal No. 2053142

AFFIRMED

_____

Submitted: March 28, 2023
Filed: May 1, 2023

T. Jonathan Cook, Esq.                     Don Wandling, Esq.
Jordan M. Martin, Esq.                     Anne L. Wandling, Esq.
Cipriani & Werner, P.C.                    Wandling Law Office, LLC
Charleston, West Virginia                  Logan, West Virginia
Counsel for the Petitioner                 Counsel for the Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS OF THE COURT**

1.    "When reviewing a decision of the West Virginia Workers' Compensation Board of Review ('the Board'), this Court will give deference to the Board's findings of fact and will review de novo its legal conclusions. The decision of the Board may be reversed or modified only if it (1) is in clear violation of a constitutional or statutory provision; (2) is clearly the result of erroneous conclusions of law; or (3) is based upon material findings of fact that are clearly wrong." Syl. Pt. 1, *Moran v. Rosciti Constr. Co., LLC*, 240 W. Va. 692, 815 S.E.2d 503 (2018).

2.    "*W. Va. Code*, 23-4-15(b) [2010], in cases not involving the death of the claimant, sets forth two time limitations regarding the filing of an application for occupational pneumoconiosis benefits: (1) within three years from and after the last day of the last continuous period of sixty days or more during which the claimant was exposed to the hazards of occupational pneumoconiosis or (2) within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician." Syl. Pt. 1, *Pennington v. West Virginia Office of the Ins. Comm'r*, 241 W. Va. 180, 820 S.E.2d 626 (2018).

3.    "Where a claim for occupational pneumoconiosis benefits has been denied, a new application may be filed, in cases not involving the death of the claimant, based on the same date of last exposure as the prior claim, if filed pursuant to the first time limitation and attendant requirements of *W. Va. Code*, 23-4-15(b) [2010]: within three

i

years of the date of last exposure to occupational dust. If not filed within that time limitation, a new application may be filed pursuant to the second time limitation of *W. Va. Code*, 23-4-15(b) [2010]: within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician. Under the second time limitation, the new application, will not be referred to the Occupational Pneumoconiosis Board unless the Physician's Report filed with the claimant's new application sets forth a diagnosed impairment due to occupational pneumoconiosis." Syl. Pt. 2, *Pennington v. West Virginia Office of the Ins. Comm'r*, 241 W. Va. 180, 820 S.E.2d 626 (2018).

4.      "A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

**HUTCHISON, Justice:**

The Respondent, Clifford Marenko, filed a claim for occupational pneumoconiosis benefits against the Petitioner, Argus Energy, LLC (Argus). The claims representative for Argus's worker's compensation insurance carrier found the claim untimely and denied it. Mr. Marenko protested to the Office of Judges (OOJ), which reversed and found the claim timely. Thereafter, the Occupational Pneumoconiosis Board found that Mr. Marenko had a ten-percent impairment. Argus then appealed to the Board of Review (BOR) on the timeliness issue. By order entered February 10, 2021, the BOR affirmed the OOJ's finding that Mr. Marenko's claim was timely. Argus appealed the BOR's timeliness ruling to this Court. After careful consideration of the parties' briefs and oral argument, the appendix record, as well as review of the relevant legal authority, we affirm the order of the BOR.

## I.  Facts and Procedural Background

Mr. Marenko filed two successive claims for occupational pneumoconiosis. In his first claim, Mr. Marenko was originally granted a ten-percent permanent partial disability award. Mr. Marenko appears to have protested that award to try to obtain a greater percentage. The Occupational Pneumoconiosis Board issued a ruling sometime in

1

2013, that Mr. Marenko had no impairment from occupational pneumoconiosis.[1] Mr. Marenko worked at Argus until December 31, 2013, when Argus shuttered its doors. Mr. Marenko did not work anywhere after December 31, 2013, where he was exposed to coal dust or silica.[2]

On July 7, 2017, Argus's worker's compensation insurance carrier received Mr. Marenko's second claim for occupational pneumoconiosis benefits (the claim that directly underlies this appeal). He listed his date of last exposure in this claim as December 31, 2013. His application was accompanied by a Physician's Report of Occupational Pneumoconiosis dated January 31, 2017, which contained, *inter alia*, four preprinted question blocks that were answered in handwriting (indicated in bold) thusly:

> In your opinion has claimant contracted occupational pneumoconiosis?  **X** Yes _ No
>
> How long has claimant been suffering from the disease of occupational pneumoconiosis? **5 yrs.**
>
> Has the claimant's capacity for work been impaired by occupational pneumoconiosis? **X** Yes ___ No

---

[1]The history of this first case is not particularly clear to us given the sparsity of records in the appendix record in this case. We are drawing from the OOJ and BOR orders entered in the present case and Mr. Marenko's testimony during his deposition in the present case.

[2]The scant appendix record Argus provided to this Court does not contain any primary records that would substantiate these facts. Nevertheless, these facts are recited in the OOJ order and the parties do not dispute them. As such, we consider them to be accurate recitations of the procedural history in this case.

If yes, to what extent? **Shortness of breath, cough, wheezing, and trouble breathing that impairs his ability to walk long distance [sic]**

The signature block on the Physician's Report of Occupational Pneumoconiosis was signed and dated, but the signature was illegible.

On August 21, 2017, the claims representative for Argus's workers' compensation carrier denied the claim, in pertinent part, because the claims representative found that it was not filed within the three-year statute of limitations contained in West Virginia Code § 23-4-15(b) (2010).[3] The OOJ reversed. After engaging in an analysis of West Virginia Code §§ 23-4-15(b) and 23-4-15b (2009), the OOJ ruled that Mr. Marenko "has yet to be diagnosed with impairment from occupational pneumoconiosis. He has three years to file his claim from the date of his diagnosed impairment." The OOJ went on to state that "[a]ccordingly, [Mr. Marenko] is not time barred from filing this claim as he has three years from the date he is diagnosed with impairment from occupational pneumoconiosis; his prior diagnosed impairment was reversed. His claim should be processed on a non-medical basis." The OOJ concluded that "[a]s [Mr. Marenko] has not

---

[3]The entirety of the claims representative's decision concerning Mr. Marenko's timeliness reads, "Your claim is DENIED. [Y]ou did not file your claim within the applicable statute of limitations. See W. Va. Code 23-4-15(b)."

been diagnosed with impairment, since the prior diagnosis was reversed, he is not untimely." Argus appealed to the BOR.

Several months after the OOJ ruled, and while this case was pending in the BOR, this Court issued its opinion in *Pennington v. West Virginia Office of the Insurance Commissioner*, 241 W. Va. 180, 820 S.E.2d 626 (2018) which addressed application of West Virginia Code § 23-4-15(b). In Syllabus Point 2 of *Pennington*, we held:

> Where a claim for occupational pneumoconiosis benefits has been denied, a new application may be filed, in cases not involving the death of the claimant, based on the same date of last exposure as the prior claim, if filed pursuant to the first time limitation and attendant requirements of *W. Va. Code*, 23-4-15(b) [2010]: within three years of the date of last exposure to occupational dust. If not filed within that time limitation, a new application may be filed pursuant to the second time limitation of *W. Va. Code*, 23-4-15(b) [2010]: within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician. Under the second time limitation, the new application, will not be referred to the Occupational Pneumoconiosis Board unless the Physician's Report filed with the claimant's new application sets forth a diagnosed impairment due to occupational pneumoconiosis.

The BOR affirmed the OOJ's conclusion that Mr. Marenko was timely but rejected the reasoning the OOJ employed to reach that conclusion. The BOR's order recited, "[o]n the Physician's Report of Occupational Pneumoconiosis, the medical provider said [Mr. Marenko's] capacity for work has been impaired by occupational pneumoconiosis." The BOR concluded, "[b]ased on the Supreme Court's ruling in

4

*Pennington v. West Virginia Office of the Insurance Commissioner*, 820 S.E.2d 626 (W. Va. 2018), the Board finds the claim to be timely filed."[4] Argus now appeals the BOR's decision.

## II. Standard of Review

The standards governing our review are contained in Syllabus Point 1 of *Moran v. Rosciti Construction Co., LLC*, 240 W. Va. 692, 815 S.E.2d 503 (2018):

> When reviewing a decision of the West Virginia Workers' Compensation Board of Review ("the Board"), this Court will give deference to the Board's findings of fact and will review de novo its legal conclusions. The decision of the Board may be reversed or modified only if it (1) is in clear violation of a constitutional or statutory provision; (2) is clearly the result of erroneous conclusions of law; or (3) is based upon material findings of fact that are clearly wrong.

With these standards in mind, we turn to the issue before the Court.

---

[4]The BOR's February 10, 2021, order, recites that on October 4, 2018, the Occupational Pneumoconiosis Board found Mr. Marenko had "no more than the 10% pulmonary functional impairment attributable to occupational pneumoconiosis found in a prior claim." The BOR order additionally recited that "[o]n December 2, 2020, the Occupational Pneumoconiosis Board members testified that their recommendation is 10% impairment." While there are no documents in the appendix record in this case substantiating these findings, they are made as recitations in the BOR order and the parties do not dispute them. As such, we consider them to be accurate recitations of the procedural history in this case. *See supra* n.2.

## III. Discussion

This appeal involves the time limits contained in West Virginia Code § 23-4-15(b), which provides:

> To entitle any employee to compensation for occupational pneumoconiosis under the provisions of this subsection, the application for compensation shall be made on the form or forms prescribed by the Insurance Commissioner, and filed with the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis or within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician and unless filed within the three-year period, the right to compensation under this chapter is forever barred, such time limitation being hereby declared to be a condition of the right and hence jurisdictional, or, in the case of death, the application shall be filed by the dependent of the employee within two years from and after the employee's death, and such time limitation is a condition of the right and hence jurisdictional.

In Syllabus Point 1 of *Pennington*, we held:

> *W. Va. Code*, 23-4-15(b) [2010], in cases not involving the death of the claimant, sets forth two time limitations regarding the filing of an application for occupational pneumoconiosis benefits: (1) within three years from and after the last day of the last continuous period of sixty days or more during which the claimant was exposed to the hazards of occupational pneumoconiosis or (2) within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician.

6

241 W. Va. 180, 820 S.E.2d 626.

We further expounded on the application of West Virginia Code § 24-4-15(b) in Syllabus Point 2 of *Pennington*:

> Where a claim for occupational pneumoconiosis benefits has been denied, a new application may be filed, in cases not involving the death of the claimant, based on the same date of last exposure as the prior claim, if filed pursuant to the first time limitation and attendant requirements of *W. Va. Code*, 23-4-15(b) [2010]: within three years of the date of last exposure to occupational dust. If not filed within that time limitation, a new application may be filed pursuant to the second time limitation of *W. Va. Code*, 23-4-15(b) [2010]: within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the claimant by a physician. Under the second time limitation, the new application, will not be referred to the Occupational Pneumoconiosis Board unless the Physician's Report filed with the claimant's new application sets forth a diagnosed impairment due to occupational pneumoconiosis.

241 W. Va. 180, 820 S.E.2d 626.

Typically, we would now turn to addressing the assignments of error raised in Argus's brief. However, we confront a preliminary question about this appeal—what exactly is Argus arguing to this Court? In its brief to this Court, Argus argued that "[t]he Physician's Report of Occupational Pneumoconiosis was signed on **January 31, 2017.**" (emphasis in original). "The provider who completed the application **did not diagnose impairment from OP.**" (emphasis in original). Argus's brief also asserted, "[Mr.

7

Marenko] did not introduce any evidence showing a diagnosable impairment." Argus additionally asserted in its brief, "[t]he Office of Judges agreed [Mr. Marenko] '. . . has yet to be diagnosed with impairment from [OP].'" Thus, Argus's brief asserted there was no evidence in the record that Mr. Marenko had been diagnosed with an impairment due to occupational pneumoconiosis. At oral argument before this Court, however, Argus abandoned this contention[5] and posed a different one—that Mr. Marenko failed to prove that the Physician's Report of Occupational Pneumoconiosis was signed by a physician and so Mr. Marenko did not prove that he filed his claim within three years of being informed by a physician that he had impairment.[6] For the reasons below, we reject the claim Argus raised in oral argument.

We begin by recognizing that Argus's oral argument to this Court asserted a position that it did not advocate in its brief. This is ordinarily impermissible.

Requiring a party to clearly raise in its brief the issues to be presented on appeal is specifically required by our appellate procedure rules. W. Va. R. App. P. 10(c)(3)

---

[5]For which reason, we do not address it in this opinion.

[6]When questioned during oral argument before this Court, Argus's counsel asserted that its appellate brief in this Court did raise the contention that Mr. Marenko failed to prove that the Physician's Report of Occupational Pneumoconiosis was signed by a physician, and further, was argued to the tribunals below. We disagree. The appendix record is bereft of any briefs or other pleadings filed in the OOJ or in the BOR by Argus indicating that this issue was previously raised.

("The brief opens with a list of the assignments of error that are presented for review, expressed in terms and circumstances of the case but without unnecessary detail."). Likewise, our appellate procedure rules obligate the parties to support the issues they raise with reasoned argument supported by appropriate references to the appendix record and citation to pertinent legal authority. *Id*. R. 10(c)(7). In the past we have identified that failure to adhere to these rules will likely preclude a petitioner from raising a new assignment of error during oral argument. *See Dellinger v. Pediatrix Med. Grp., P.C.*, 232 W. Va. 115, 119 n.8, 750 S.E.2d 668, 672 n.8 (2013) (per curiam). Indeed, limiting a party to asserting the issues and arguments in an appeal to those clearly set forth in a party's brief is important because raising an issue or argument in an appellate brief provides the necessary notice to both this Court and the opposing party as to what they confront so each can adequately prepare and discharge their respective responsibilities. *See*, *e.g.*, *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007) ("By failing to present the issue properly, Beaumont has deprived its opponent of a fair opportunity to respond comprehensively to its claim, and has deprived this court of the benefit of a robust debate informed by zealous advocacy."). Consequently, appellate courts generally do not

consider issues[7] or arguments[8] raised for the first time in oral argument because such issues or arguments are waived by failure to include them in the appellate brief. *See, e.g.*, 5 Am. Jur. 2d *Appellate Review* § 501 (2018) (footnotes omitted) ("Since points which have not been briefed are waived, abandoned or forfeited, an appellate court does not address issues raised for the first time during oral argument nor issues raised in oral argument that have not been briefed.").[9]

---

[7]*See, e.g.*, *United States v. Legins*, 34 F.4th 304, 319 n.18 (4th Cir.) ("As a general matter, we do not consider issues raised for the first time at oral argument."); *cert. denied*, 143 S. Ct. 266 (2022); *United States v. Eastland*, 989 F.2d 760, 765 n.7 (5th Cir. 1993) ("Needless to say, we generally do not address issues raised for the first time at oral argument."); *Duffee v. District of Columbia*, 93 A.3d 1273, 1276 n.2 (D.C. 2014) ("To the extent that appellants attempted to raise the issue at oral argument, we generally do not consider points raised for the first time on appeal at oral argument.").

[8]*See, e.g.*, *Clendening v. United States,* 19 F.4th 421, 433 n.9 (4th Cir. 2021) (citation omitted) ("[W]e generally 'will not consider arguments not made in the briefs, but raised instead for the first time at oral argument[.]'")*, cert. denied*, 143 S. Ct. 11 (2022); *Martinez v. Mukasey*, 519 F.3d 532, 545 (5th Cir.), *as amended* (June 5, 2008) ("For obvious reasons, we generally do *not* consider contentions raised for the first time at oral argument."); *Brookens v. United States*, 182 A.3d 123, 133 n.18 (D.C. 2018) ("We generally do not consider arguments raised for the first time at oral argument[.]").

[9]We recognize that the rule barring new issues and arguments from being raised for the first time during oral argument is only prudential and not jurisdictional. As such, an appellate court may dispense with the rule within its discretion. *Mitchell v. Gamble*, 86 P.3d 944, 949–50 (Ariz. Ct. App. 2004). We hasten to add that the exercise of such discretion is limited to a showing of extraordinary or exceptional circumstances. *See, e.g.*, *United States v. Vazquez-Rivera*, 407 F.3d 476, 487 (1st Cir. 2005) ("While we have often reiterated that issues raised only in a reply brief or at oral argument are generally considered waived, we will exercise our discretion to consider new issues under exceptional circumstances."); *United States v. Lande*, 40 F.3d 329, 331 n.2 (10th Cir. 1994) (citation omitted) ("'Except in extraordinary circumstances . . . a court of appeals will not consider an issue raised for the first time at oral argument.'"). Therefore, the power to address an issue or argument first raised during oral argument is rarely exercised. *See Powell v. State*, 120 So.3d 577, 593 (Fla. Dist. Ct. App. 2013) (noting that an appellate

In this case, though, Argus's new position challenges subject matter jurisdiction. In cases dealing with subject matter jurisdiction, the rule against raising a new issue or argument in oral argument—premised as it is on principles of waiver—does not apply because "[w]e have stated categorically that '[s]ubject matter jurisdiction may never be waived.'" *State ex rel. Barden & Robeson Corp. v. Hill*, 208 W. Va. 163, 168, 539 S.E.2d 106, 111 (2000) (quoting *Dishman v. Jarrell*, 165 W. Va. 709, 712, 271 S.E.2d 348, 350 (1980)). Consequently, a question of subject matter jurisdiction may be raised for the first time on appeal. *E.g.*, *Lewis v. Municipality of Masontown*, 241 W. Va. 166, 170, 820 S.E.2d 612, 616 (2018). We believe that such a rule encompasses raising the subject matter jurisdiction question for the first-time during oral argument. *See, e.g.*, *United States v. Williams*, 2 F. App'x 284, 289 n.4 (4th Cir. 2001) ("[A]rguments alleging a lack of subject matter jurisdiction may be raised for the first time at oral argument, since such claims are never waived and may be considered sua sponte even if never raised by the parties."); *Rath v. Rath*, 892 N.W.2d 205, 207 (N.D. 2017) ("[C]hallenges to subject matter jurisdiction can be raised at anytime, even for the first time at oral argument."). We will, therefore, address the subject matter jurisdiction argument that Argus first raised in oral argument before this Court. *See, e.g., Roberts v. Comm'r*, 175 F.3d 889, 897 n.11 (11th Cir. 1999)

---

court should consider arguments raised for the first time at oral argument only in "[r]are or unusual instances"); *Burris v. Brown*, 245 P.3d 12 (Kan. Ct. App. 2011) (Table) (text available at 2011 WL 135031, at *3) ("While an appellate court has the authority to [address an issue raised for the first time in oral argument], in all but the most unusual cases, that authority remains better unexercised.").

("Although we normally do not address issues raised for the first time at oral argument, we make an exception in situations such as this where the existence of our jurisdiction is in doubt.");[10] *Canario v. Culhane*, 752 A.2d 476, 478 (R.I. 2000) ("Generally, this Court would not entertain an issue raised for the first time at oral argument, particularly an issue that had not been raised before the Superior Court. However, since subject matter jurisdiction may be raised at any time, we shall address this issue.").[11]

We begin with a review of the pertinent statute at issue in this case, West Virginia Code § 23-4-15(b), that specifically sets forth a three-year statute of limitations. Ordinarily, statutes of limitations and other filing deadlines are not jurisdictional. *See*, *e.g.*, *Musacchio v. United States*, 577 U.S. 237, 246 (2016) (citation omitted) ("Statutes of limitations and other filing deadlines 'ordinarily are not jurisdictional.'"); *see generally* 51 Am. Jur. 2d *Limitation of Actions* § 12 (2021) (footnotes omitted) ("A statute of limitations generally is not jurisdictional and does not operate as a jurisdictional limit."). A statutory

---

[10]Our appellate jurisdiction is in issue because appellate jurisdiction is a derivative jurisdiction. "An appellate court derives its jurisdiction from the lower court, and can have no greater subject matter or personal jurisdiction than the lower court. Thus, if the lower court lacks jurisdiction to decide a case on its merits, the appellate court also lacks jurisdiction to decide the case." 4 C.J.S. *Appeal and Error* § 78 (2019) (footnotes omitted).

[11]The fact that we address subject matter jurisdiction in this case should not be taken as a license to excuse raising the issue in both the lower tribunal and in the appellate brief. We remind counsel that, as officers of the Court, they have the obligation to "raise such a dispositive issue in [their] brief in accordance with Rule [10] of the [West Virginia] Rules of Appellate Procedure, as well as in the [lower tribunal] so as to give notice to th[at] [tribunal] of such a challenge." *Canario*, 752 A.2d at 478.

time bar, though, *is* jurisdictional if the Legislature has "'clearly stated'" that it is. *See Musacchio*, 577 U.S. at 246 (citation omitted) ("We treat a time bar as jurisdictional only if Congress has 'clearly stated' that it is."). We conclude that the Legislature has made the statute of limitations contained in West Virginia Code § 23-4-15(b) jurisdictional.

West Virginia Code § 23-4-15(b) provides, in pertinent part, "unless filed within the three-year period, the right to compensation under this chapter is forever barred, such time limitation being hereby declared to be a condition of the right and hence jurisdictional." Almost identical language appears in subsection (a) of West Virginia Code § 23-4-15[12] and in *Sheena H. ex rel. Russell H. ex rel. L.H. v. Amfire, LLC*, 235 W. Va. 132, 138, 772 S.E.2d 317, 323 (2015), we characterized such language as being jurisdictional. Thus, we conclude that West Virginia Code § 23-4-15(b) implicates subject matter jurisdiction. Having concluded that West Virginia Code § 23-4-15(b) implicates subject matter jurisdiction, we now address the argument Argus raised during oral argument concerning this statute.

During oral argument before this Court, Argus argued that Mr. Marenko did not prove that the person who signed the Physician Report of Occupational

---

[12]West Virginia Code § 23-4-15(a) is the general worker's compensation statute of limitation. Subsection (a) provides, in pertinent part, "unless filed within the six months period, the right to compensation under this chapter is forever barred, such time limitation being hereby declared to be a condition of the right and hence jurisdictional[.]"

Pneumoconiosis was a physician, and thus Mr. Marenko did not show that he filed "within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to the employee by a physician[.]" Argus's new argument does not survive scrutiny because the BOR order finding that "[o]n the Physician's Report of Occupational Pneumoconiosis, the medical provider said [Mr. Marenko's] capacity for work has been impaired by occupational pneumoconiosis[,]" was a sufficient finding that the report was signed by a physician.

Under Syllabus Point 1 of *Moran v. Rosciti Construction Co., LLC*, 240 W. Va. 692, 815 S.E.2d 503 (2018), we may not reverse or modify a BOR decision unless that decision is, in pertinent part, "based upon material findings of fact that are clearly wrong." The clearly wrong standard is synonymous with the clearly erroneous standard. *Serge v. Matney*, 165 W. Va. 801, 805, 273 S.E.2d 818, 820 (1980). The clearly erroneous standard is highly deferential. *See Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 106, 459 S.E.2d 374, 383 (1995). "Demonstrating clear error is no mean feat." *In re Chicago Mgmt. Consulting Grp., Inc.*, 929 F.3d 803, 809 (7th Cir. 2019). "A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). A party does not meet this burden "by suggesting that the findings are 'maybe' or 'probably wrong.'" *United States v. Leedy*, 65 M.J. 208, 213 n.4 (C.A.A.F. 2007) (citation omitted). Rather, the challenged factual finding must "strike us wrong with the 'force of a

14

five-week-old, unrefrigerated dead fish.'" *Brown v. Gobble*, 196 W. Va. 559, 563, 474 S.E.2d 489, 493 (1996) (quoting *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir.1993)). Argus "cannot clear this titanic olfactory hurdle." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1108 (7th Cir. 2000).

The BOR order in this case specifically found, "[o]n the Physician's Report of Occupational Pneumoconiosis, the medical provider said [Mr. Marenko's] capacity for work has been impaired by occupational pneumoconiosis." While the signature on the Physician's Report of Occupational Pneumoconiosis is not legible, it is undisputed that the Report was signed by someone and the report form was itself entitled "***Physician's*** Report of Occupational Pneumoconiosis[.]" (emphasis added). Since the form in question was a ***Physician's*** Report of Occupational Pneumoconiosis, and since Argus submitted no evidence in rebuttal, we do not believe that the BOR clearly erred in finding that the pertinent requirements of *Pennington* were satisfied—that Mr. Marenko filed his Occupational Pneumoconiosis claim within three years from and after a diagnosed impairment due to occupational pneumoconiosis was made known to him by a physician.[13]

---

[13]Since we decide the BOR's finding that the Physician's Report of Occupational Pneumoconiosis indicated impairment was not clearly erroneous, we do not address whether a diagnosis made by someone other than a physician can satisfy West Virginia Code § 23-4-15(b) as interpreted by *Pennington*.

15

## IV. Conclusion

For the foregoing reasons, the Workers' Compensation Board of Review's Order of February 10, 2021, is affirmed.

Affirmed.

16